IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANJENNETTA DUFFIELD[1], | ) | Case No. 5:20-cv-1065 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | THOMAS M. PARKER |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

## I.      Introduction

Plaintiff, Anjenetta Duffield, seeks judicial review of the final decision of the

Commissioner of Social Security, denying her applications for disability insurance benefits

("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security

Act.  This matter is before the court pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and the parties

consented to magistrate judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  ECF

Doc. 16.  Because the Administrative Law Judge ("ALJ") applied proper legal standards and

reached a conclusion supported by substantial evidence and any failure to do so was harmless

error, the Commissioner's final decision denying Duffield's applications for DIB and SSI must

be AFFIRMED.

---

[1] At the ALJ hearing, the plaintiff stated that her name was changed from Duffield to Willis following her
divorce in December 2018.  (Tr. 236).  Because this case was filed two years later, in 2020 under the
name "Anjenetta Duffield," the court will refer to the plaintiff as "Duffield."

## II.      Procedural History

Duffield applied for DIB on February 9, 2017 and SSI on March 9, 2017.  (Tr. 444-56).[2]
Duffield's applications alleged that she became disabled on October 12, 2015, due to: "1.
Narcolepsy; 2. Emphasemia [*sic*]; 3. PTSD; 4. Anxiety; 5. Depressive Disorder; 6. Arthritis;
7. Sleep Apnea."  (Tr. 444, 451, 477).  The Social Security Administration denied Duffield's
applications initially and upon reconsideration.  (Tr. 278-361).  Duffield requested an
administrative hearing.  (Tr. 384-85).  ALJ Paul Goodale heard Duffield's case on March 8,
2019, and denied the claim sin an April 3, 2019 decision.  (Tr. 13-33, 225-77).  On April 3, 2020,
the Appeals Council denied further review, rendering the ALJ's decision the final decision of the
Commissioner.  (Tr. 1-7).  And on May 15, 2020, Duffield filed a complaint to obtain judicial
review.  ECF Doc. 1.

## III.     Evidence

### A.      Personal, Educational, and Vocational Evidence

Duffield was born on March 1, 1968, and she was 47 years old on the alleged onset date.
(Tr. 444).  Duffield graduated from high school, completed two years of college, and received an
associate degree in AutoCAD from ETI Tech College in 2000.  (Tr. 238, 478).  Duffield had past
relevant work as a retail store manager.  (Tr. 26, 269, 479).

### B.      Medical Records and Duffield's Hearing Testimony

In his written decision, the ALJ summarized the relevant medical evidence and Duffield's
hearing testimony.  *See* (Tr. 19-21, 23-26).  Duffield has not specifically challenged the ALJ's
summary of the medical evidence or submitted new evidence, but challenges only the way the
ALJ treated the medical opinion evidence.  *See generally* ECF Doc. 13.  The parties' briefing

---

[2] The administrative transcript appears in ECF Doc. 12.

also provides an exhaustive summary of the relevant medical evidence. *See* ECF Doc. 13 at 3-9; ECF Doc. 15 at 2-6. And independent review has not revealed any material inconsistencies among (i) the ALJ's summary of the medical records and Duffield's testimony, (ii) the parties' summaries of the medical records and Duffield's testimony, or (iii) the evidence in the record before this court. *Compare* (Tr. 19-21, 23-26); ECF Doc. 13 at 3-9; ECF Doc. 15 at 2-6, *with* (Tr. 235-68, 540-1686). Thus, the court adopts and incorporates by reference the ALJ's summary of the medical evidence and Duffield's testimony.[3]

### C. Relevant Medical Opinions

Notwithstanding the court's adoption of the ALJ's summary of the medical evidence, specific discussion is warranted for the following medical opinions that Duffield has challenged on judicial review.

### 1. Treating Psychologist Opinion – Meredith Erwin, Ph.D.

Meredith Erwin, Ph.D., was Duffield's treating psychologist at Summa Health Traumatic Stress Center, beginning in September 2018. (Tr. 1506-09).

On March 1, 2019, Dr. Erwin completed a "mental impairment questionnaire" with Ellen Harrington, Ph.D. (another psychologist at the Summa health Traumatic Stress Center). (Tr. 1613-19). Dr. Erwin and Dr. Harrington noted that Duffield began individual and group therapy in October 2018, successfully graduated from her intensive outpatient program ("IOP") in November 2018, and participated in a weekly skill building group since her graduation from the IOP. (Tr. 1617). She was diagnosed with PTSD with panic attacks and depressive disorder.

---

[3] *See Biestek v. Comm'r of Soc. Sec.*, No. 16-cv-10422, 2017 U.S. Dist. LEXIS 47762, at *2-3 (E.D. Mich. Feb. 24, 2017) (adopting an ALJ's summary of medical evidence and hearing testimony), *adopted by* 2017 U.S. Dist. LEXIS 47209 (E.D. Mich. Mar. 30, 2017), *aff'd by* 880 F.3d 7787 (6th Cir. 2017), *aff'd* by 139 S. Ct. 1148 (2019). *See also Paulin v. SSA*, 657 F. Supp. 2d 939, 942 (M.D. Tenn. 2009); *Hase v. Colvin*, 207 F. Supp. 3d 1174, 1177 (D. Or. 2016).

(Tr. 1617).  Her symptoms included anhedonia, loss of interest in activities, decreased energy, feelings of guilt or worthlessness, mood and affect disturbance, difficulty thinking or concentrating, recurrent and intrusive recollections of traumatic experiences, vigilance and scanning, sleep disturbance, and emotional withdrawal and isolation.  (Tr. 1614).  Dr. Erwin opined that Duffield would have "none-mild" limitations in understanding, remembering, or applying information; marked limitations in interacting with others; mild limitations in maintaining concentration, persistence, or pace; and moderate to marked limitations in adapting or managing herself.  (Tr. 1615).  Dr. Erwin specifically explained that Duffield's PTSD and depression would impact her ability to interact with others at work and her ability to concentrate while performing job tasks.  (Tr. 1619).  Dr. Erwin said that Duffield would "most benefit" from flexible job hours, limited interaction with others, and an environment that enabled her to take frequent breaks due to concentration difficulties.  (Tr. 1619).

Dr. Erwin said that Duffield's treatment plan included individual trauma-focused therapy and cognitive processing therapy, and Dr. Erwin indicated she was motivated, completed her assigned "homework" outside of session, and attended her sessions regularly.  (Tr. 1617). Dr. Erwin stated that her clinical findings at the time of her opinion showed that Duffield:

> is presently alert and oriented to person, place, time, and present situations.  The patient continues to present as well-groomed with a spontaneous demeanor, normal physical activity, and normal eye contract.  The patient presents with moderate depressed mood, moderate anxiety, mild anger, moderate anhedonia, mild problems with concentration, and full range of affect.  The patient displays good judgment and insight, and . . . [no] observed problems with memory.  The patient's present mood difficulties contribute to impairments in overall functioning and completion of activities of daily living.  * * * With continued attendance in individual and group therapy, the patient's prognosis is favorable.

(Tr. 1617). Dr. Erwin stated that Duffield attended 2.5 hours of treatment per week, her treatment attendance could interfere with her work attendance to "some degree," and fluctuation in her symptom severity could cause her to miss more work. (Tr. 1618).

### 2. Evaluating Psychologist Opinion – Derek Mihalcin, Ph.D.

On November 30, 2016, psychologist Derek Mihalcin, Ph.D., evaluated Duffield on referral from primary care physician Martin Escobar, M.D., for "diagnostic clarification and possible disability submission." (Tr. 690-94, 751-55). Duffield told Dr. Mihalcin that she had increased anxiety, depression, stress, sleep difficulties, worry, fear, and mood regulation difficulty. (Tr. 690, 751). She said that her major stressors included the July 2016 death of her mother, her October 2016 separation from her husband due to domestic violence, and ongoing concerns about her safety. (Tr. 691, 752).

On examination, Dr. Mihalcin noted that Duffield made consistent eye contact, had an appropriate affect, and had adequate thought process. (Tr. 691, 752). She was fully oriented, had adequate attention, and was "able to absorb details needed for responsible judgments." (Tr. 691, 752). She had no demonstrated memory deficits and was able to give a "rich description" of important events from memory. (Tr. 691, 752). She had no difficulty with concept formation, judgment, and verbal abstractions. (Tr. 691, 752). Dr. Mihalcin noted that Duffield's decision making might be limited in situations involving task demands and production norms. (Tr. 691, 752). But her clinical symptoms were "largely transitory." (Tr. 691, 752).

Dr. Mihalcin opined that Duffield was "able to function on a satisfactory basis," but she had deficient ability to maintain socially acceptable interpersonal conduct and might have periods of marked emotional, cognitive, or behavioral dysfunction. (Tr. 692, 753). Dr. Mihalcin said that Duffield's fear of abandonment and melancholy demeanor would lead her to self-doubt,

"doing only for others," and display a desire to comply.  (Tr. 692-93, 753-54).  He also said that Duffield would have difficulty with simple responsibilities that demanded more energy than she could muster.  (Tr. 693, 754).  Duffield would be especially sensitive to social humiliation, and she would have occasional outbursts of anger, panic attacks, exaggerated startle responses, and a subjective sense of numbing and detachment.  (Tr. 693, 754).  Dr. Mihalcin said that Duffield was:

> unemployable at any skill level at this time. . . . It is likely that she would have difficulty following instructions in competitive, high-paced employment environment and may fall short in meeting quality standards for production norms.  Should symptoms stabilize over time, she may be able to re-enter employment.

(Tr. 694, 755).

### 3.     Mental Health Counselor Opinion – Robert Dubec, P.C.C.-S

Robert Dubec, P.C.C.-S provided mental health counseling services to Duffield from July 2014 through December 2016 at Oakwood Counseling Center.  (Tr. 678-89, 695-749).

On March 27, 2017, Opportunities for Ohioans with Disabilities Division of Disability Determination sent a "mental status questionnaire" to Oakwood Counseling Medical Records with a request for response by April 10, 2017.  (Tr. 1052).  The questionnaire indicated that it may be completed by a physician or psychologist.  (Tr. 1053).  An unsigned and undated copy of the "mental status questionnaire" was completed in handwriting, but the document did not indicate who completed it.  (Tr. 1052-57).  The treatment dates recited in the document correspond to Dubec's treatment dates, the ALJ treated the questionnaire as an opinion by Dubec, and the parties appear to agree that Dubec was the source of that opinion.  (Tr. 25, 1052); ECF Doc. 13 at 4; ECF Doc. 15 at 5-6.  Thus, the court will also treat the completed questionnaire as an opinion by Dubec.

6

In the "mental status questionnaire," Dubec said that Duffield had appropriate appearance, controlled flow of conversation and speech, normal mood and affect, full orientation to all spheres, and normal cognitive functioning (concentration, memory, abstract reasoning, fund of information, and range of intelligence).  (Tr. 1053).  Dubec also said that Duffield had tearful/fearful anxiety symptoms, illogical thinking disorders, and poor insight/judgment.  (Tr. 1053).  Dubec opined that Duffield's symptoms would cause trouble with directions ("as reported by client"), difficulty maintaining attention and concentration, unknown social interaction ability, and trouble with adaptation.  (Tr. 1054).  Dubec stated that Duffield was "[n]ot able to deal with workplace pressures [and c]annot follow rules."  (Tr. 1054).

On March 27, 2017, Dubec also completed and signed a "daily activities questionnaire." (Tr. 1056-57) ("May be completed by social worker, case worker, etc.").  Dubec indicated that he did not know: (1) Duffield's living arrangements at the time; (2) how well she got along with family, friends, neighbors, employers, supervisors, or coworkers; or (3) whether she had ever had any legal difficulties.  (Tr. 1056-57).  Dubec said that Duffield had "trouble with concentration Paying attention."  (Tr. 1056).  And he said that Duffield was able sustainably and effectively prepare food, complete household chores, care for her personal hygiene, shop, drive or use public transportation, bank, and pay bills.  (Tr. 1057).  Dubec stated that he had not seen Duffield since December 2016.  (Tr. 1057).

On April 5, 2017, Dubec completed another "daily activities questionnaire," in which Dubec stated that Duffield was unable to focus, narcoleptic, and unable to follow rules. (Tr. 1063, 1070).  Dubec also stated that Duffield was able to keep her biweekly appointments and she was compliant with her treatment when she was under his care in 2014 through 2016. (Tr. 1064).

### 4.    State Agency Consultants Opinions

On April 19, 2017, state agency consultant Todd Finnerty, Psy.D., evaluated Duffield's mental functional capacity based on a review of her mental health records.  (Tr. 288, 292-94). Dr. Finnerty determined Duffield did not have any understanding or memory limitations. (Tr. 292).  She had moderate limitations in her ability to carry out detailed instructions; maintaining attention and concentration for extended periods; completing a normal workday or workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; and responding appropriately to changes in the workplace. (Tr. 292-93).  She was not significantly limited in her ability to: carry out very short and simple instructions; perform activities within a schedule; maintain regular attendance; be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; ask simple questions or requesting assistance; maintain socially appropriate behavior; adhere to basic standards of neatness and cleanliness; be aware of normal hazards and taking appropriate precautions; travel in unfamiliar places or using public transportation; or set realistic goals or make independent plans.  (Tr. 292-94).  Dr. Finnerty explained that Duffield: (1) could work in settings without fast pace; (2) was capable of superficial interactions with the public, coworkers, and her supervisor; and (3) could adapt to a static setting without frequent changes.  (Tr. 293-94).  On November 7, 2017, Katherine Fernandez, Psy.D., concurred with Dr. Finnerty's opinion.  (Tr. 392, 334-36).

### D.     Relevant Testimony

Larry Takki, a vocational expert ("VE") testified at the ALJ hearing.  (Tr. 268- ).  The

ALJ asked the VE whether a hypothetical individual with Duffield's age, education, and

experience could work if she were limited to:

> the light exertional level.  Lifting up to 10 pounds frequently, 20 pounds
> occasionally.  Standing and walking for up to six hours, sitting for up to six hours,
> but with the following additional limitations.  Could only occasionally stoop,
> crouch, crawl and kneel.  Could frequently climb ramps or stairs.  Should not
> climb ladders, ropes, or scaffolds at all.  This person should avoid concentrated
> exposure to – really, to avoid exposure to the extent possible, more than just
> concentrated, to workplace hazards such as dangerous machinery or unprotected
> heights.  I'm excluding motor vehicles from the definition of dangerous
> machinery.  This person could do simple, routine, repetitive tasks in a work
> environment free of fast-paced production requirements involving only simple,
> work-related decisions, and few, if any, workplace changes.  She could not do
> assembly line type of work.  That is work in close tandem with coworkers at a
> pace that's outwardly set.  But could do individual table or bench work consistent
> with the other limitations.  This person could have only occasional interaction
> with the public, and superficial interaction with coworkers and supervisors.

(Tr. 270-71).  The VE said that all of Duffield's past work would be precluded, but such an

individual could work in the representative occupations of office cleaner, price marker, or

assembler of electronics.  (Tr. 271-72).

The ALJ asked the VE whether the individual described in the first hypothetical could

work if:

> due to limitations in concentration, pace, and persistence, whether due to mental
> distraction, mental upset, fatigue, or a combination of all of those factors, this
> person would need to take two or more extra work breaks of 20 minutes each.
> These are over and above regular work breaks.  And in general, would be off task
> some 20 percent or more in an eight hour work day.  Separately, this person may
> be absent, that is have unscheduled, unplanned absences of two or more days per
> month on a recurring basis.

(Tr. 273).  The VE testified that either the off-task limitation or the absences limitation would independently be work preclusive based on his experience.  (Tr. 273).  The VE explained that anything greater than 10 to 15 percent of off-task time would be work preclusive.  (Tr. 273-74).

## IV.  The ALJ's Decision

On April 3, 2019, the ALJ issued a written decision denying Duffield's claims.  (Tr. 16-28).  The ALJ made the following paraphrased findings relevant to Duffield's arguments on judicial review:

> 5.  Duffield has the residual functional capacity to perform light work, but with the following limitations: she can occasionally stoop, crouch, crawl and kneel, can frequently climb ramps and stairs, but can never climb ladders, ropes or scaffolds. She must avoid exposure to workplace hazards such as dangerous machinery (excluding motor vehicles) and unprotected heights.  Duffield can do simple, routine, repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions, with few, if any, workplace changes, in two-hour periods with normal work breaks.  She cannot do assembly line type work (outwardly paced, working in close tandem with coworkers), but could do individual table or bench work.  She could have occasional contact with the general public and with coworkers and supervisors. (Tr. 22)
>
> The claimant reported to Derek Mihalcin, Ph.D. at Oakwood Counseling Center for intake, mental status examination, and possible disability submission on November 30, 2016.  (Ex 3F [Tr. 750-55]).  The claimant endorsed a history significant for domestic violence.  She presented with appropriate dress and hygiene, consistent eye contact, appropriate affect, and adequate thought process. Formal mental status examination revealed the claimant was fully oriented, had adequate attention appearing to absorb details needed for responsible judgment. She demonstrated no deficits in long or short-term memory.  She had no difficulty with concept formation, judgment and verbal abstractions, although her decision-making may be limited at times involving task demands and production norms.  (Id. at 3 [Tr. 752]).  Dr. Mihalcin diagnosed the claimant with major depressive disorder, recurrent, severe without psychotic features; adjustment disorder with mixed anxiety and depressed mood; and posttraumatic stress disorder.  He opined that the claimant is unemployable at any skill level at this time, and that it is likely she would have difficulty following instructions in competitive, high-paced employment and may fall short in meeting quality standards for production norms. (Id. at 6 [Tr. 755]).  (Tr. 24).

10

As for the opinion evidence, the undersigned gives great evidentiary weigh to the opinions of the State agency medical and psychological consultants, because they are supported by and consistent with the record as a whole. (Ex 1A [Tr. 278-97], 2A [Tr. 298-317], 5A [Tr. 320-39], 6A [Tr. 340-59]). They provided extensive rationales to support their findings, citing to specific evidence of record and resolving inconsistencies in the record.  These consultants assessed specific functional limitations and abilities consistent with the findings on physical examinations, diagnostic testing and mental status examinations.  Furthermore, the Commissioner designates the State agency medical and psychological consultants.  They have extensive knowledge of the Social Security programs and its regulations.  Accordingly, the undersigned affords great evidentiary weight to the State agency medical and psychological consultants' opinions.  (Tr. 25).

The undersigned has considered the opinion of Dr. Derek Mihalcin.  (Ex 3F [Tr. 750-55).  He opined that the claimant is unemployable at any skill level at this time. It is likely she would have difficulty following instructions in competitive, high-paced employment and may fall short in meeting quality standards for production norms.  (Id. at 6 [Tr. 755]).  The undersigned notes that statements that a claimant is disabled, unable to work, able to work, or statements about a claimant's residual functional capacity are not considered medical opinions because these statements would direct a determination in a case.  The foregoing types of statements are administrative issues reserved to the Commissioner and the Administrative Law Judge here.  Furthermore, because these statements are considered "evidence that is inherently neither valuable nor persuasive," no analysis of how such evidence is analyzed is necessary in our decision.  (Tr. 25).

The undersigned has also considered the assessments made by the claimant's former therapist Robert Dubec, PCC.  (Ex 8F [Tr. 1051-58], 9F [Tr. 1059-65], 10F [Tr. 1066-71]).  Mr. Dubec is not recognized as an acceptable medical source under the regulations.  His statements are evidence from "other sources" that may be useful in providing insight in the severity of an individual's impairment and the impact the impairment may have on secondary functional limitations.  The undersigned recognizes the lengthy, but remote treatment relationship that Mr. Dubec has had with the claimant, and finds his assessment is probative in determining the severity of the claimant's mental health impairments and resulting functional limitations, and gives his assessment some weight.  The undersigned has given some consideration to Mr. Dubec's assessments in analyzing steps two through five of the sequential evaluation process.  (Tr. 25).

Finally the undersigned has considered the opinions of Meredith Erwin, Ph.D. and Ellen Harrington, Ph.D.  (Ex 20F [Tr. 1612-19]).  Limited weight is given to their opinion that the claimant experiences marked limitations in social interaction and the ability to adapt and manage herself.  The findings of marked limitations in these areas are inconsistent with the normal findings on mental status examinations from providers, the claimant's ability to function within group

11

therapy, her ability to keep regular attendance.  In addition, these providers' own analysis, in which they state that the claimant would have difficulty interacting well with others, and would benefit from a job that involves working individually to limit interactions with others, suggests only moderate limitations in this area. (Id. [Tr. 1612-19]).  Although the undersigned does agree that the claimant has some limitations in the areas identified by Dr. Erwin and Harrington, the degree of marked limitation is not supported in the record.  Accordingly, the undersigned affords it limited weight.  (Tr. 26).

Based on the ALJ's findings, and testimony from the VE that Duffield could perform a significant number of jobs in the national economy notwithstanding her impairments, the ALJ determined that Duffield was not disabled from October 12, 2015, through the date of the decision.  (Tr. 27-28).  Thus, the ALJ denied Duffield's claims for DIB and SSI.  (Tr. 28).

## V.      Law & Analysis

### A.      Standard of Review

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied.  42 U.S.C. §§ 405(g), 1383(c)(3); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is not a high threshold for sufficiency.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision still cannot be overturned "'so long as substantial evidence also supports the conclusion reached by the ALJ.'"  *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. Aug 7, 2020) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)).  Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence.  *Jones*, 336 F.3d at 476.  And "it is not necessary that this court agree with the Commissioner's finding," so long as it meets this low standard for

evidentiary support.  *Rogers*, 486 F.3d at 241; *see also Biestek*, 880 F.3d at 783 ("It is not our role to try the case de novo." (quotation omitted)).  This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless.  *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error.").  Furthermore, the court will not uphold a decision, when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result."  *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-CV-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10 CV 017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-CV-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).  Requiring an accurate and logical bridge ensures that a claimant, as well as a reviewing court, will understand the ALJ's reasoning.

The Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits: (1) whether the claimant is engaged in substantial

gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). Although it is the Commissioner's obligation to produce evidence at Step Five, the claimant bears the ultimate burden to produce sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. §§ 404.1512(a), 416.912(a).

## B.   Step Four:  Weighing Physician Opinions

### 1.   Parties' Arguments

Duffield argues that the ALJ failed to apply proper legal standards and reach a decision supported by substantial evidence in weighing medical opinions from Dr. Mihalcin, Dr. Dubec, and Dr. Erwin. ECF Doc. 13 at 11-14. Duffield asserts that the ALJ improperly determined that he was not required to analyze Dr. Mihalcin's opinion on the grounds that it entirely opined on a matter reserved to the Commissioner, and that Dr. Mihalcin's specialization in mental-health treatment made his opinion worthy of deference. ECF Doc. 13 at 12. Duffield contends that the ALJ improperly discounted therapist Dubec's opinion as an "other source" opinion, and that greater deference to Dubec's limitations – no workplace pressures or rules – would have resulted in a finding that she was not capable of competitive employment. ECF Doc. 13 at 12-13. Duffield argues that the ALJ improperly considered Dr. Erwin's opinion only at Step Three and failed to consider or explain how he considered the opinion at Step Four. ECF Doc. 13 at 14.

Duffield also asserts that VE testimony established that crediting Dr. Erwin's opinions regarding breaks needed and absenteeism would have resulted in a finding that she was not able to work. ECF Doc. 13 at 14.  Duffield also contends that Dr. Mihalcin's, Dr. Dubec's, and Dr. Erwin's opinions were entitled to greater weight because they were consistent with each other, and that the remaining opinions in the record should have been given less weight.  ECF Doc. 13 at 14.

The Commissioner responds that the ALJ properly rejected the portion of Dr. Mihalcin's statement that Duffield was "unemployable" as an opinion on a matter reserved to the Commissioner, and that the ALJ's failure to otherwise address the specific limitations discussed in Dr. Mihalcin's opinion was harmless because the RFC accounted for those limitations.  ECF Doc. 15 at 9-10.  The Commissioner argues that the ALJ adequately explained that: (1) he gave limited weight to the marked limitations in Dr. Erwin's opinion because they were inconsistent with normal examination findings, Duffield's ability to improve with group therapy, and her ability to maintain attendance; and (2) Dr. Erwin's own analysis indicated that Duffield had only moderate limitations in interacting with others, which were accounted for in the RFC.  ECF Doc. 15 at 11-13.  The Commissioner also asserts that the ALJ provided an "indirect attack" on Dr. Erwin's opinion that Duffield needed a flexible work schedule by giving greater weight to the state agency consultants' opinions.  ECF Doc. 15 at 13.  The Commissioner further contends that the ALJ properly and adequately explained that Dubec's opinion was an "other source" opinion, and that the Dubec's opinion did not state that Duffield was restricted to an environment without pressures or rules.  ECF Doc. 15 at 15.

## 2.    Medical Opinion Standard

At Step Four, an ALJ must weigh every medical opinion that the Social Security Administration receives.  20 C.F.R. §§ 404.1527(c), 416.927(c).  An ALJ must give a treating

source opinion controlling weight, unless the opinion is: (1) not "supported by medically acceptable clinical and laboratory diagnostic techniques"; or (2) inconsistent with finding in the treating source's own records or other medical evidence in the case record.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 786 (6th Cir. 2017).  And, if the ALJ finds either prong justifies giving the treating source opinion less-than-controlling weight, he must articulate "good reasons" for doing so – *i.e.*, explain which prong justifies that decision.  *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013); *Biestek*, 880 F.3d at 786.

An ALJ must assign weight to treating source opinions that are entitled to less-than-controlling weight and non-treating source opinions (which are never assessed for controlling weight).  *Gayheart*, 710 F.3d at 376.  In doing so, the ALJ must consider:  the length and frequency of treatment, the supportability of the opinion, the consistency of the opinion with the record as a whole, whether the treating physician is a specialist, the physician's understanding of the disability program and its evidentiary requirements, the physician's familiarity with other information in the record, and other factors that might be brought to the ALJ's attention.  *See Gayheart*, 710 F.3d at 376; 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).[4]  Nothing in the regulations requires the ALJ to explain how he considered each of the factors.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Biestek*, 880 F.3d at 786 ("The ALJ need not perform an exhaustive, step-by-step analysis of each factor.").  When the ALJ fails to adequately explain the weight given to a treating physician's opinion, or otherwise fails to provide good reasons for the weight given to a treating physician's opinion, remand is appropriate.  *Cole*, 661

---

[4] On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017.  *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017).  Because Duffield filed her claims on February 9, 2017 and March 9, 2017, the pre-March 27, 2017, regulations apply to this case.

F.3d at 939; *see also Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (holding that the failure to identify good reasons affecting the weight given to an opinion "'denotes a lack of substantial evidence, even whe[n] the conclusion of the ALJ may be justified based upon the record.'" (citing *Rogers*, 486 F.3d at 243)). Generally, an examining physician's opinion is due more weight than a nonexamining physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Gayheart*, 710 F.3d at 375. And an ALJ does not need to articulate good reasons for rejecting a nontreating or nonexamining source opinion. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (declining to address whether an ALJ erred in failing to give good reasons for not accepting non-treating physicians' opinions). Nevertheless, an ALJ must provide sufficient explanation for the claimant and any reviewing court to be able to "trace the path of his reasoning." *Stacy v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011); *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 643 (6th Cir. 2013) (holding that an ALJ erred when he stated that an examining physician's tests were invalid without explaining why they were invalid).

An ALJ need not give any special deference to an opinion from source that is not an "acceptable medical source" or provide "good reasons" for discounting it. *See* 20 C.F.R. § 404.1513(a)(2) (2016) (defining "acceptable medical source," for claims filed before March 27, 2017, as licensed physicians, psychologists, optometrists, podiatrists, and speech-language pathologists); *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) (unpublished); *Pruitt v. Comm'r of Soc. Sec.*, No. 1:16-cv-2927, 2018 U.S. Dist. LEXIS 49512 *44 (N.D. Ohio 2018). Nevertheless, the ALJ should consider the opinion "along with the other relevant evidence in the file," taking into account: (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the

17

degree to which the source presents relevant evidence to support an opinion; (4) whether the source has a specialty or area of expertise related to the individual's impairment(s); and (5) any other factors that tend to support or refute the opinion. *See* SSR 06-3p, 2006 SSR LEXIS 5 (Jan. 1, 2006) (noting that licensed clinical social workers, *inter alia*, have increasingly assumed a greater percentage of treatment and evaluation functions)[5]; *see also Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 541 (6th Cir. 2007). And the ALJ "should generally explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent review to follow the adjudicator's reasoning." SSR 06-3p, 2006 SSR LEXIS 5.

Notwithstanding the requirement that an ALJ consider and weigh medical opinion evidence, an ALJ is not permitted to give any deference to opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d). These issues include: (1) whether a claimant has an impairment or combination of impairments that meets or medically equal an impairment in the Listing of Impairments; (2) the claimant's RFC; (3) the application of vocational factors; and (4) whether a claimant is "disabled" or "unable to work." 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2).

### 3. Analysis

#### a. *Dr. Mihalcin's Opinion*

The ALJ failed to apply proper legal standards in evaluating Dr. Mihalcin's opinion. 42 U.S.C. §§ 405(g), 1383(c)(3); *Rogers*, 486 F.3d at 241. Because Dr. Mihalcin was an examining physician only, the ALJ was not required to consider whether his opinion was due controlling

---

[5] The Commissioner rescinded SSR 06-3p for claims filed on or after March 27, 2017. *Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p*, 82 Fed. Reg. 15263 (Mar. 27, 2017). Because Duffield filed her claim before March 27, 2017, SSR 06-3p applies in this case.

weight.  *Gayheart*, 710 F.3d at 376.  And because Dr. Mihalcin was not a treating source, the ALJ was not required to state "good reasons" for discounting his opinions.  *Smith*, 482 F.3d at 876.  Nevertheless, he was required to assign weight to the opinion.  20 C.F.R. §§ 404.1527(c), 416.927(c); *Stacy*, 451 F. App'x at 519.  However, the ALJ correctly explained that he was not required to credit Dr. Mihalcin's statement that Duffield was "unemployable at any skill level" because that statement was an opinion on an issue reserved for the Commissioner.  (Tr. 694, 755); 20 C.F.R. §§ 404.1527(d), 416.927(d).  Nevertheless, the ALJ was required to give some explanation for the ultimate weight that he gave to the remainder of Dr. Mihalcin's opinion, which set out specific functional limitations related to Duffield's ability to follow instructions, maintain production, maintain appropriate workplace behavior, interact appropriately with others in the workplace, and handle workplace pressures and responsibility.  (Tr. 691-94, 752-55); *Gayheart*, 710 F.3d at 376; *Stacy*, 451 F. App'x at 519; *Brooks*, 531 F. App'x at 643.  The ALJ did not provide any such explanation.  (Tr. 25).  Instead, the ALJ: (1) expressly grouped Dr. Mihalcin's functional limitations opinions with Dr. Mihalcin's statement that Duffield would be unemployable; and (2) determined that all the statements in Dr. Mihalcin's opinion were on "administrative issues reserved to the Commissioner and the Administrative Law Judge here" and had no value to the RFC analysis.  (Tr. 25).  The ALJ was wrong to do so.  The functional limitations described in Dr. Mihalcin's opinion were not matters reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d).  And Dr. Mihalcin's statements regarding Duffield's functional limitations could have been valuable to the ALJ's RFC analysis.

But the ALJ's error here was harmless because the ALJ's RFC actually *included* nearly all of same functional limitations described in Dr. Mihalcin's opinion.  *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547

(6th Cir. 2004).  Dr. Mihalcin's statements that Duffield would have difficulty following instructions in competitive environments found its place in the ALJ's finding that she was limited to "simple, routine, repetitive tasks" with "few, if any, workplace changes."  *Compare* (Tr. 691, 694, 752, 755), *with* (Tr. 22).  Duffield's difficulty in competitive, high-paced environments and limited ability to meet quality standards for production norms was translated to "a work environment free of fast-paced production requirements . . . She cannot do assembly line work (outwardly paced, working in close tandem with coworkers)."  *Compare* (Tr. 694, 755), *with* (Tr. 22).  Her difficulty with simple responsibilities and self-doubt is parallel to her limitation to "simple, work-related decisions."  *Compare* (Tr. 693, 754), *with* (Tr. 22).  And the behavioral and social difficulties that Dr. Mihalcin described appeared in the ALJ's finding that Duffield was limited to "occasional contact with the general public and coworkers and supervisors."  *Compare* (Tr. 692-93, 753-54), *with* (Tr. 22).

The only limitation from Dr. Mihalcin's opinion the ALJ did not adopt in the RFC was that work be limited to "two-hour periods with normal work breaks."  *Compare* (Tr. 693, 745), *with* (Tr. 22).  But the ALJ: (1) was not required to adopt each functional limitation that he did not find supported by substantial evidence; and (2) it is clear the ALJ found such a limitation unsupported when he rejected Dr. Erwin's opinion regarding schedule flexibility (*see* Section V.B.3.b., below).  *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("[T]here is no requirement that an ALJ adopt [a medical source's] limitations wholesale."); (Tr. 26).  Thus, there is no basis on which the court can conclude that a remand for the ALJ to provide a proper explanation for how he treated Dr. Mihalcin's opinion would have any impact on the outcome of Duffield's claims.  *Rabbers*, 582 F.3d at 655-56 (An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless.); *Kobetic v.*

*Comm'r of Soc. Sec.,* 114 Fed. Appx. 171, 173 (6th Cir. 2004) (The court does not remand when doing so "would be an idle and useless formality.").

**b.** *Dr. Erwin's Opinion*

The ALJ applied proper legal standards in evaluating Dr. Erwin's opinion. 42 U.S.C. §§ 405(g), 1383(c)(3); *Rogers*, 486 F.3d at 241. The ALJ complied with the regulations when he explained that he gave only "limited weight" (and, necessarily, less-than-controlling weight) to Dr. Erwin's opinion because: (1) it was inconsistent with objective medial findings reflecting normal mental status reports, Duffield's ability to function in group therapy, and Duffield's ability to keep regular attendance; and (2) his marked limitations therein were unsupported by Dr. Erwin's own findings, which demonstrated only moderate limitations in social interaction. (Tr. 26); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Biestek*, 880 F.3d at 786; *Gayheart*, 710 F.3d at 376. These were "good reasons" for discounting Dr. Erwin's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Biestek*, 880 F.3d at 786; *Gayheart*, 710 F.3d at 376. And the ALJ's explanation adequately addressed all facets of Dr. Erwin's opinion – including rejecting Dr. Erwin's opinion regarding absenteeism and the need for a flexible work schedule by noting records reflecting Duffield's ability to maintain attendance. *Compare* (Tr. 26), *with* (Tr. 1612-19).

Substantial evidence also supported the ALJ's reasons for discounting Dr. Erwin's opinion. Such evidence includes: (1) Dr. Erwin's own findings that Duffield had only mild to moderate symptoms, was able to attend 2.5 hours weekly of individual and group therapy regularly, completed her "homework" outside of session, made normal eye contact, was well groomed, and successfully completed intensive outpatient therapy; (2) Duffield's own written statement indicating that she spent her day cleaning her house, had custody of her grandson and

21

was able to care for him and help him with homework, could prepare meals, was able to maintain friendships with people who to the extent that they would help take care of her grandson and shop for her, could pay bills and handle her finances; and (3) medical treatment notes consistently reflecting that Duffield had adequate attention, normal mood and behavior, normal judgment, active engagement in group therapy, normal memory, and good grooming.  (Tr. 20-22, 24) (citing Tr. 487, 489-91, 756-91, 1080-1116, 1202-35, 1236-1602, 1617-18).

Even if the court were to find any error in the ALJ's treatment of Dr. Erwin's opinion, that error would be harmless.  *Rabbers*, 582 F.3d at 654.  The ALJ's ultimate RFC finding actually *adopted* Dr. Erwin's opinions regarding social interaction, adaptability, and personal management by limiting Duffield to: (1) only occasional contact with the general public, coworkers, and supervisors; and (2) simple, routine, repetitive work with few changes and in a non-production driven environment.  *Compare* (Tr. 22), *with* (Tr. 1612-18); *Friend*, 375 F. App'x 551; *Wilson*, 378 F.3d at 547.  And the ALJ "indirectly attacked" Dr. Erwin's absenteeism limitations when he explained that the state agency consultants' opinions – which provided that Duffield was not significantly limited in performing activities within a schedule, maintaining regular attendance, being punctual, and sustaining an ordinary routine – were consistent with the objective evidence in the record.  (Tr. 25, 292-94, 334-36); *Friend*, 375 F. App'x at 551 (citing *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006)).  Moreover, this portion of Dr. Erwin's opinion expressed limitations that would "most benefit" Duffield, but an RFC assessment reflects *the most a claimant can do*, not a description of *optimal conditions*.  (Tr. 1619); *See Horinek v. Saul*, No. 1:19-cv-2141, 2020 U.S. Dist. LEXIS 133252, at *26 (N.D. Ohio Jul. 7, 2020) ("[T]he ALJ was not required to create an optimal work setting for Plaintiff.  'Optimal conditions . . . are not

necessary ones.'" (citing *Jakubiak v. Berryhill*, 337 F. Supp. 3d 80, 85-86 (D. Mass. 2018))).

Thus, because there is no reason to believe that any alleged flaw in the ALJ's assessment of

Dr. Erwin's opinion prejudiced Duffield, any error in that analysis was harmless. *Rabbers*, 582

F.3d at 654.

### c.   *Therapist Dubec's Opinion*

The ALJ applied proper legal standards and reached a decision supported by substantial

evidence in evaluating Counselor Robert Dubec's opinion.  Here, the ALJ properly identified

Dubec's opinion as an "other source" opinion.  20 C.F.R. § 404.1513(a)(2) (2016); SSR 06-3p,

2006 SSR LEXIS 5.  And, because Dubec was not an "acceptable medical source," the ALJ was

not required to give any particular deference or weight to that opinion.  20 C.F.R.

§ 404.1513(a)(2) (2016); *Hill*, 560 F. App'x at 550.  Further, the ALJ explained that he

considered Dubec's opinion as probative at all steps due to the "lengthy, but remote treatment

relationship" that Dubec had with Duffield.  (Tr. 25); SSR 06-3p, 2006 SSR LEXIS 5.  Thus, the

ALJ – properly – did not wholly disregard Dubec's opinion.  SSR 06-3p, 2006 SSR LEXIS 5.

The only specific limitations from Dubec's opinion that Duffield asserts the ALJ

improperly failed to integrate into the RFC finding are Dubec's findings that Duffield was unable

to handle work pressures and could not follow rules.  ECF Doc. 13 at 13; (Tr. 1054).  The court

agrees that it was arguably error for the ALJ to not only fail to integrate these limitations into the

RFC, but also fail to even address these limitations when the ALJ said that he found Dubec's

opinion "probative."  *Compare* (Tr. 22, 25), *with* (Tr. 1054); SSR 06-3p, 2006 SSR LEXIS 5.

This might even rise to the level of failing to draw an accurate and logical bridge between:

(1) the ALJ's finding that Dubec's opinion was probative; and (2) the ALJ's decision not to

integrate limitations from that opinion into the RFC.  *See Fleischer*, 774 F. Supp. 2d at 877.

Nevertheless, an ALJ's finding that an "other source" opinion is probative does not require the ALJ to adopt *every* limitation from that opinion. *Cf. Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even [when] an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt [a medical source's] limitations wholesale."). And the ALJ's decision as a whole provides sufficient explanation to understand why these limitations were not adopted into the RFC, including: (1) the ALJ's adoption of the state agency consultant opinions, which found that Duffield was not significantly limited in her ability to make simple work-related decisions, maintain appropriate behavior, make independent plans, perform activities within a schedule, be punctual, and sustain an ordinary routine; and (2) the ALJ's recitation of medical records consistently showed that Duffield had average judgment and insight, normal behavior, normal mood and affect, and active engagement in group therapy. *See* (Tr. 22-25) (citing Tr. 756-91, 1080-116, 1202-35, 1236-1602, 1053-57, 1063-64, 1070). Moreover, it is unlikely that any adjudicator could have credited those portions of Dubec's opinion when he also wrote that he *did not know* how well Duffield was able to get along with others, including employers, supervisors, and coworkers. *Compare* (Tr. 1056-57), *with* (Tr. 1054, 1063, 1070); *see also Friend*, 375 F. App'x at 551 (stating that a failure to strictly comply with legal procedures is harmless when the opinion is so patently deficient that it could not be credited).

Accordingly, the ALJ properly identified Dubec's opinion as an "other source" opinion and did not commit reversible error in failing to integrate limitations from that opinion into the ultimate RFC finding.

#### d.     *Remaining Opinions*

Although Duffield asserts that the ALJ erred in giving greater weight to the remaining opinions in the record, she does not specifically allege any errors in the way the ALJ treated other opinions in the record or support any such argument with citations to the record and law. *See* ECF Doc. 13 at 14.  Thus, any argument attacking the way the ALJ treated other opinions in the record is forfeited.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'  *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995).");  *see also NCUA Bd. v. Zovko*, 728 F. App'x 567, 569 (6th Cir. 2018) (argument "waived" when its proponent included only one legal citation and no citations referencing any supporting evidence resulted).

## VI.     Conclusion

Because the ALJ applied proper legal standards and reached a conclusion supported by substantial evidence and any failure to do so was harmless error, the Commissioner's final decision denying Duffield's applications for DIB and SSI is AFFIRMED.

**IT IS SO ORDERED.**

Dated: March 17, 2021

Thomas M. Parker
United States Magistrate Judge